**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

SHEILA HOLMES                                    *
                                                 *
                    Plaintiff                    *
                                                 *
V.                                               *
                                                 *          NO: 4:10CV1165  SWW
                                                 *
MICHAEL RUSSELL and JERRY                        *
HENRY, in their individual and official          *
capacities                                       *
                                                 *
                    Defendants

**ORDER**

Plaintiff Sheila Holmes brings this action pursuant to 42 U.S.C. § 1983, claiming that

Osceola police officers Michael Russell ("Russell") and Jerry Henry ("Henry"), sued in their

individual and official capacities, arrested and detained her in violation of her constitutional

rights.  Before the Court is Defendants' motion for summary judgment (docket entries #69, #70,

#71, #72), Plaintiff's response in opposition (docket entries #90, #91, #92), and Defendants'

reply (docket entry #93).  After careful consideration, and for reasons that follow, summary

judgment is granted in Defendants' favor, and this action is dismissed with prejudice.

**I.  Standard of Review**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  As a

prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to

support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party has properly supported its motion for summary judgment, the non-

moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing a genuine issue for trial.'" *Id*. at 587 (quoting Fed. R. Civ. P. 56(e)).   "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

## II.  Background

The following facts are undisputed.  On January 10, 2008, Defendants Henry and Russell were serving patrol duty in separate police cars.  Henry observed an individual named Courtney Holmes in the front passenger's seat of a vehicle that passed by, and he believed that Holmes was the subject of a felony arrest warrant.  The vehicle that Henry observed was driven by Plaintiff Sheila Holmes, Courtney Holmes's aunt, and it contained two additional passengers. Henry called dispatch to confirm that an outstanding warrant existed for Courtney Holmes, and he contacted Russell by cell phone for backup assistance.

Russell spotted Plaintiff's vehicle and followed it with his patrol lights flashing, and Henry followed behind.  Plaintiff's vehicle came to a stop, and Russell observed Courtney Holmes's hand reach out of the front passenger window and grab the exterior door latch.  *See* docket entry #71, Ex. E (Russell Dep.) at 15-17; *see also* docket entry #72 (DVD dash cam video).   Russell positioned his vehicle on the roadside curb next to the passenger's side of Plaintiff's vehicle in an effort to stop Courtney Holmes from fleeing.  *See id.*

After stopping, Plaintiff's vehicle moved forward several feet, and Russell drove on the

curb parallel to Plaintiff's vehicle in an attempt to prevent Courtney Holmes from fleeing. *See*
*id.* According to Russell, he anticipated that Courtney Holmes would run because he had been
charged with fleeing several times before. *See* Russell Dep., at 17("We've had several, several
occurrences with him and his fleeing and his failure to appear, and with this being a felony
warrant, I knew he was going to run.").

Again, Plaintiff's vehicle came to a stop. Plaintiff and two female passengers exited the
vehicle, but Courtney Holmes remained inside. *See* docket entry #71, Ex. F (Courtney Holmes
Dep.) at 19. Russell exited his vehicle, and went to passenger's side of Plaintiff's vehicle, while
Henry approached the driver's side. *See* Russell Dep. at 23, Henry Dep. at 54-57; *see also*
docket entry #71, Ex. A (Sheila Holmes Dep.) at 22. Russell attempted to open the front
passenger's door to gain access to Courtney Holmes, but it was locked. *See* Russell Dep. at 24.
In deposition, Courtney Holmes admitted that after Plaintiff and other passengers left the
vehicle, he locked the doors. *See* Courtney Holmes Dep. at 19.

Russell recalls that Courtney Holmes failed to comply with Henry's repeated orders to
exit the vehicle, and Henry "tased" Holmes after he "revved" the engine and attempted to put
Plaintiff's vehicle into gear. *See* Russell Dep. at 24-25, 28-29. Russell went to the back of
Plaintiff's vehicle and shot a back tire in an attempt to immobilize the vehicle. In deposition,
Russell testified that he shot the tire because he feared that Courtney Homes would drive the
vehicle in reverse and injure someone. *Id*.

Despite Russell's efforts, Courtney Holmes put the vehicle in reverse and drove
backwards, and Russell shot the front passenger tire. *See* Russell Dep. at 31. Courtney Holmes
then managed to turn the vehicle around, and he drove away. *See* Russell Dep. at 32. Russell

3

shot at another tire, and Russell and Henry pursued Holmes on foot, to no avail. *Id.* Subsequently, Courtney Holmes abandoned Plaintiff's vehicle and fled into a dwelling where he was apprehended and taken into custody. *See* docket entry #71, Ex. B. (attached arrest report for Courtney Holmes).

At some point during the traffic stop, other officers arrived at the scene, including Jeff Creecy, who arrested Plaintiff. Officer Creecy handcuffed Plaintiff and drove her to the police station. *See* Sheila Holmes Dep., at 34. Plaintiff was charged with fleeing and hindering apprehension or prosecution, and she remained detained overnight. The next morning, Plaintiff provided a statement and was released on bond. *See id.*, at 36-37.

On August 25, 2008, Mississippi County deputy prosecutor Catherine Dean ("Dean") *nolle prossed* the pending criminal charges against Plaintiff in exchange for Plaintiff's agreement not to file a civil lawsuit against the City or its police officers. The order of *nolle pros* reads, in pertinent part, as follows: "[N]olle pros on condition that no civil lawsuit is filed against City of Osceola or its Officers." Docket entry #71, Ex. C (Order of Nolle Pros).

On August 23, 2010, Plaintiff commenced this action pursuant to 42 U.S.C. § 1983, suing Russell and Henry in their individual and official capacities. Plaintiff claims that Defendants violated her rights under the Fourth, Fifth, and Fourteenth Amendments by arresting and detaining her on January 10, 2008. As for her official capacity charges, which are claims against the City of Osceola, Plaintiff claims that the City's customs, policies, and practices and failure to train police officers caused her alleged constitutional deprivations.

### III.  Discussion

4

Defendants move for summary judgment, arguing that (1) Plaintiff waived her right to bring this lawsuit pursuant to a release-dismissal agreement, (2) Plaintiff is unable to show that she suffered a constitutional deprivation, (3) Henry and Russell are entitled to qualified immunity, and (4) Plaintiff is unable to demonstrate a basis for municipal liability.

**Release-Dismissal Agreement**

In *Town of Newton v. Rumery*, 480 U.S. 386, 107 S.Ct. 1187 (1987), the Supreme Court held that the validity of a release-dismissal agreement--a criminal defendant's release of civil claims in return for a prosecutor's dismissal of pending criminal charges–must be determined on a case-by-case basis. *See Rumery*, 480 U.S. at 399, 107 S. Ct. at 1195 (O'Connor, J., concurring). "Provided the release was voluntary, there was no prosecutorial overreaching, and the relevant public interests are not adversely affected, releases should be upheld." *Woods v. Rhodes*, 994 F.2d 494, 499 (8th Cir. 1993)(citing *Rumery*, 480 U.S. at 398, 107 S.Ct. at 1194).

Factors for determining voluntariness include whether the signer was represented by counsel, whether she expressed any unwillingness, and whether the agreement was clear on its face. *See id.* In this case, Plaintiff was represented by counsel when she signed the *nolle pros* order, which states that the charges against her were *nolle prossed* on the condition that she would not file a civil lawsuit against the City or its police officers. Additionally, Plaintiff testified in deposition that she spoke with her attorney before she signed the order and that she signed the order voluntarily. *See* Sheila Holmes Dep., at 44-45.

In opposition to summary judgment, Plaintiff submits an affidavit stating that when she signed the *nolle pros* order, she did not understand that it permanently prevented her from filing a lawsuit against the City and its police officers related to her arrest and detention. *See* docket

entry #91, Ex. #2.    Plaintiff explains: "I did not sign my name to forever discharge and release

the City . . . from any future litigation as I have always intended to file a cause of action against

them for wrongful conduct. . . . I believed that the prosecuting attorney had only one (1) year in

which to refile the same charges against me.  And during that one year period of time I did not

file any suit."  *Id*.

The *nolle pros* order clearly states  that the charges against Plaintiff were *nolle prossed*

on the condition that "no civil lawsuit is filed."  Even assuming that Plaintiff misunderstood the

agreement and believed that she could bring suit after the expiration of one year, such

misapprehension does not negate a finding that she knowingly waived the right to bring suit.

*See United States v. Ruiz*, 536 U.S. 622, 628-630, 122 S.Ct. 2450, 2455 (2002)("It is possible to

knowingly waive a general right without fully contemplating the specific effects of the waiver.

And the law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the

defendant fully understands the nature of the right and how it would likely apply in general in

the circumstances-even though the defendant may not know the specific detailed consequences

of invoking it.").   The Court finds that the undisputed evidence shows that Plaintiff knowingly

and voluntarily signed the *nolle pros* order and agreed to release the right to bring a civil lawsuit

against the City and its officers.

Although the record does not support a finding that deputy prosecutor Dean engaged in

overreaching, Defendants also shoulder the burden to prove that Dean entered the release-

dismissal agreement for a legitimate reason, directly related to her prosecutorial responsibilities.

*See Woods v. Rhodes,*  994 F.2d 494, 500 (8th Cir. 1993).   In *Rumery*, for example, the

prosecutor entered a release-dismissal agreement in order to spare a rape victim public scrutiny

6

and embarrassment and to avoid the risk of hindering the victim's ability to testify in a pending

sexual assault case.

Here, Dean testifies that her release-dismissal agreement with Plaintiff was conditioned

on a guilty plea by Courtney Holmes.  Dean testifies: "I had legitimate reasons for entering the

*nolle pros* agreement with [Plaintiff ], including but not limited to the anticipated guilty plea of

[Courtney Holmes], which was also entered on August 25, 2008."  Docket entry #81, Ex. #2

(Dean Aff.) ¶ 7.  Dean further testifies:  "On August 25, 2009, after [Courtney Holmes] entered

his guilty plea and was sentenced by the Court, I presented the Order of *Nolle Pros* to the Court

for signature . . . . " *Id.*, ¶ 11.

Plaintiff submits a copy of Courtney Holmes's guilty plea statement signed by Holmes

and the prosecuting attorney on April 25, 2008.  Docket entry #91, Ex. #16.  Given the date of

Holmes's signature, it appears that he pleaded guilty months before Plaintiff signed the *nolle*

*pros* order, and the Court cannot find that Courtney Holmes's guilty plea provided a legitimate

basis for the release-dismissal agreement.  In some cases, protecting public officials from a

frivolous lawsuit may provide a valid reason for entering a release-dismissal agreement.  Here,

however, Dean does not state that she determined that Plaintiff's potential civil claims were

frivolous or marginal.  Given the absence of evidence regarding Dean's reasons for entering the

agreement, the Court finds that the current record will not support a finding that Plaintiff's

claims are barred pursuant to a release-dismissal agreement.

### Qualified Immunity

The doctrine of qualified immunity shields government employees acting within the

scope of their duties from suit so long as their conduct does not "violate clearly established

statutory or constitutional rights of which a reasonable person would know."  *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).

Two questions guide the determination of whether Henry and Russell are entitled to qualified immunity as to claims brought against them in their individual capacity.  The first is whether the facts, viewed in a light most favorable to Plaintiff, show that Defendants' conduct violated a federal constitutional or statutory right–namely, Plaintiff's Fourth Amendment right against unreasonable seizure.[1]  *See Saucier v. Katz,* 533 U.S. 194, 201 (2001).  If a constitutional right has not been violated, Henry and Russell are entitled to qualified immunity, and Plaintiff's claims against them cannot proceed.  *See id.*  If, however, a constitutional right may have been violated, the Court must inquire whether the right was clearly established. *Id.*

The Fourth Amendment prohibits "unreasonable" seizures.  A traffic stop, which is a form of an arrest, constitutes an unreasonable seizure unless the arresting officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the stop."  *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868 (1968).  Here, it is undisputed that Russell and Henry initiated the traffic stop because they had reason to believe that there was an outstanding felony warrant for Courtney Holmes.[2]  The Court finds that the undisputed facts are conclusive:  The traffic stop was justified under the Fourth Amendment.

---

[1]Plaintiff claims that Defendants also violated her rights granted under the Fifth Amendment.  While particular rights contained in the Bill of Rights apply to the states through the Fourteenth Amendment, the Fifth Amendment's Due Process Clause applies exclusively to the federal government.  The Court finds that Plaintiff fails to allege a Fifth Amendment violation in this case.

[2]Plaintiff disputes that an active arrest warrant existed for Courtney Holmes on January 10, 2008.  However, Plaintiff submits no evidence showing that Henry or Russell lacked a reasonable basis for believing that such a warrant existed at the time of the traffic stop.

As for Plaintiff's arrest following the traffic stop, the Court must consider whether the facts and circumstances within the arresting officer's knowledge were sufficient to warrant a prudent person to believe that Plaintiff had committed an offense. *See Peterson v. City of Plymouth*, 60 F.3d 469, 473 (8th Cir. 1995) (quoting *Beck v. Ohio*, 379 U.S. 89, 85 (1964)). Simply stated, the Court's inquiry is whether the officer's actions were "objectively reasonable" in light of the facts and circumstances confronting him at the time of Plaintiff's arrest. *See Graham v. Connor*, 490 U.S. 386, 397 (1989). Here, it is undisputed that after Henry and Russell stopped Plaintiff's vehicle the first time, the vehicle moved forward, traveling approximately half a city block. Although Plaintiff now presents evidence that Courtney Holmes placed his foot on the accelerator, it was objectively reasonable for officers to believe that Plaintiff was in control of the vehicle and that she attempted to flee the scene. Accordingly, the Court finds that the undisputed facts show that Plaintiff's arrest was justified under the Fourth Amendment.

Plaintiff charges that her post-arrest detention was unconstitutional because she was held in custody for more than twenty-four hours, while steadfastly maintaining her innocence, and she was required to post a $5,000 bond prior to her release. As an initial matter, Plaintiff's claim is subject to dismissal because she does not claim that the named defendants, Henry and Russell, caused her to remain detained after her arrest. The language of § 1983 creates liability for any person who "subjects, or causes to be subjected" any individual to the deprivation of a federal right, and the City cannot be held liable under any theory unless a City police officer or City employee is liable on the underlying substantive claim. *See Abbot v. City of Crocker*, 30 F.3d 994, 998 (8th Cir. 1994). Furthermore, the record establishes that Plaintiff's post-arrest detention

did not exceed forty-eight hours,[3] and Plaintiff alleges no facts indicating that officers or jail employees acted with deliberate indifference to her constitutional rights. *See Golberg v. Hennepin County,* 417 F.3d 808, 811 (8th Cir. 2005)(affirming summary judgment where plaintiff claiming a constitutional right to timely release from an initially lawful detention failed to show deliberate indifference). The Court finds no genuine issues for trial with respect to Plaintiff's post-arrest detention. In sum, the facts do not establish a constitutional violation, and Defendants Henry and Russell are entitled to qualified immunity.

**Municipal Liability**

A suit against a public employee in his or her official capacity is a claim against the public employer, in this case the City of Osceola. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). It is fundamental that when the underlying conduct does not deprive a plaintiff of a federally protected right, an attendant §1983 claim against a municipal employer must fail. *See Olinger v. Larson*, 134 F.3d 1362, 1367 (8th Cir. 1998) ("In light of our ruling that Detective Larson and Chief Satterlee did not violate Olinger's fourth amendment rights, Olinger's claims against the City . . . must also fail."); *Abbot v. City of Crocker*, 30 F.3d 994, 998 (8th Cir. 1994) ("The City cannot be liable . . . whether on a failure to train theory or a municipal custom or policy theory, unless [an officer] is found liable on the underlying substantive claim."); *Kohl v. Casson*, 5 F.3d 1141, 1148 (8th Cir. 1993)(holding that because defendant officers possessed probable cause to obtain an arrest warrant, no basis for liability existed for the city or county).

---

[3]Pursuant to *County of Riverside v. McLaughlin*, 500 U.S. 44, 56-57, 111 S. Ct. 1661, 1670-71(1991), it is generally permissible under the Fourth Amendment to detain a person arrested without a warrant for a period of forty-eight hours before a probable cause hearing. In the instant case, Plaintiff was released on bond, and it does not appear that a probable cause hearing was contemplated. However, applying *Riverside* to Plaintiff's situation, the Court finds that Plaintiff's overnight detention was not *per se* unreasonable.

Because Plaintiff presents no facts showing that her constitutional or federally protected  rights were violated, her claim against the City must be dismissed with prejudice.

### IV.   Conclusion

For the reasons stated, Defendants' motion for summary judgment (docket entry #69) is GRANTED.  There being no issues for trial, pursuant to the judgment entered together with this order, this action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED THIS 13TH DAY OF AUGUST, 2012.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE